NOT FOR PUBLICATION (Doc. No. 8)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MICHELLE HUELAS | : | |
| Plaintiff, | : | Civil No. 11-7250 (RBK/JS) |
| v. | : | **OPINION** |
| WELLS FARGO HOME MORTGAGE, INC. | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter arises from a mortgage foreclosure dispute filed by Michelle Huelas ("Plaintiff") against Wells Fargo Home Mortgage, Inc. ("Defendant"). Presently before the Court is Defendant's Motion to Dismiss the Amended Complaint based on Plaintiff's alleged failure to state a claim upon which relief may be granted. The Court finds that Plaintiff has alleged fraudulent activity on the parts of Plaintiff's broker, Mid Atlantic Capital, LLC ("Mid Atlantic"), and originating lender, Novastar Mortgage, Inc. ("Novastar"). However, Plaintiff has neither brought suit against Mid Atlantic or Novastar, nor properly pled the existence of an agency relationship between those companies and Defendant. Therefore, and for the reasons discussed below, the Court grants Defendant's motion.

## I. BACKGROUND

On July 23, 2007, Plaintiff executed a mortgage to finance the purchase of 219 Braddock Ave., Williamstown, NJ 08094 in the principal amount of $189,000. Compl. ¶ 4. Novastar

acted as the originating lender, Mid Atlantic acted as the mortgage broker, and Defendant became the mortgage note holder.  Id.  As Plaintiff does not directly allege any wrongdoing on Defendant's part, Plaintiff's claims must rest on an agency relationship between Defendant and either Mid Atlantic and/or Novastar.

Plaintiff alleges that she provided Novastar with her 2007 income tax returns, which indicated that she earned $1,677 per month, and that Defendant's agents "fraudulently manipulated and increased the Plaintiff's monthly income to $4,750.00 [on the stated income loan application], in an attempt to qualify [] Plaintiff for a higher loan than her verifiable income could actually support."  Compl. ¶ 50.  Further, Plaintiff alleges that the monthly mortgage payment of $1,677 exceeded her actual monthly income.  Compl. ¶ 59.

Additionally, Plaintiff alleges that she requested a fixed rate loan and did not learn that she received an adjustable rate mortgage ("ARM") until the day of closing, on or about July 23, 2007.  At that time, Novastar issued Plaintiff an Adjustable Rate Promissory Note and a mortgage contract with an interest rate floor of 10.750% and a maximum adjustment to 17.750%.  Compl. ¶¶ 61-63.

Plaintiff further alleges that on the day of closing, "Defendant's agents placed hundreds of pages [of] complicated loan documents in front of the Homeowner and gave her just a few minutes to read and try to understand and sign the closing documents."  Compl. ¶ 69.  Plaintiff alleges that she expressed concern over the terms of the loan, but feared forfeiture of her already paid lending fees and being forced to move back into the motel in which her family had been residing during the application process.  Compl. ¶¶ 71-72.  Plaintiff contends that the agents told her that the current loan rate was unimportant because she would be able to refinance the

mortgage loan in six months.  Compl. ¶ 77.  Plaintiff states that despite repeated attempts, she has not since been able to refinance.[1]  Compl. ¶ 78.

Plaintiff alleges that at the time Defendant accepted the mortgage note, "it knew that Novastar routinely employed predatory lending tactics in selling residential loan products."  Compl. ¶ 5.  Plaintiff claims that as a result of the actions of Mid Atlantic, Novastar, and Defendant, Plaintiff suffered damages from increased mortgage payments, loss of equity, and onerous payment terms.  Compl. ¶ 82.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When addressing a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a Motion to Dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a three-part analysis is needed.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a

---

[1] Plaintiff alleges that Mid Atlantic again served as the broker in her attempted mortgage refinance transactions.  Compl. ¶ 15.

plaintiff must plead to state a claim." Id. (quoting Iqbal, 129 S.Ct. at 1947). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quoting Iqbal, 129 S.Ct. at 1950). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 129 S.Ct. at 1950). This plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1949. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

### B. Leave to Amend

Where a plaintiff has already amended the complaint or defendants have filed a responsive pleading, the plaintiff may further amend the complaint only with leave of the court. Fed. R. Civ. P. 15(a); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). However, the rule is not absolute: leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (citing 3 Moore's at ¶ 15.08[4], at 15-81 (3d ed. 2000)).

Leave to amend is rarely applied sua sponte. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007). In Fletcher-Harlee, the Third Circuit held that "in ordinary civil litigation it is hardly error for a district court to enter final judgment after

granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." Id. at 253; see id. at 252-53 (stating that the court "rarely applied the sua sponte amendment rule outside of the context of a civil rights case . . . . In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint.").

### III. PROCEDURAL POSTURE

When considering a motion to dismiss, a court may not generally "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). However, if the Court exercises its discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-W. Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004).

Defendant has provided a Certification of Daniel W. Lageman, one of Defendant's attorneys, in support of its motion. The Certification contains nineteen exhibits: (1) the Contract for Sale, dated June 12, 2007, (2) the Uniform Residential Loan Application, dated only by the interviewer (and not Plaintiff) on June 14, 2007, (3) the Mortgage Loan Origination Agreement with Mid Atlantic, dated June 25, 2007, (4) the Mortgage Broker Business Contract with Mid Atlantic, dated June 25, 2007, (5) the Mortgage Loan Commitment Form, dated June 25, 2007,

5

(6) the Private Mortgage Insurance Disclosure, dated June 25, 2007, (7) the Good Faith Estimate of Closing Costs, dated June 25, 2007, (8) the Truth-in-Lending Disclosure Statement prepared by Mid Atlantic, dated June 25, 2007, (9) the Request for Verification of Rent or Mortgage, dated July 3, 2007, (10) the Employment Verification Form, dated July 9, 2007, (11) the deed, dated July 23, 2007, (12) the New Jersey Homeownership Act analysis, dated July 23, 2007, (13) the Uniform Residential Loan Application, dated July 23, 2007, (14) the Settlement Statement, dated July 23, 2007, (15) the federal Truth-in-Lending Disclosure Statement prepared by Novastar, dated July 23, 2007, (16) the Occupancy and Financial Status Affidavit, dated July 23, 2007, (17) the Borrower's Certification, signed by Plaintiff but undated, (18) the Adjustable Rate Note, dated July 23, 2007, and (19) the mortgage contract, dated July 23, 2007.[2]  The parties do not dispute that all of the above documents were signed by Plaintiff.  The Court now discusses whether each of these documents may be considered on Defendant's Motion to Dismiss.

As Plaintiff's Complaint concerns her purchase of the property known as 219 Braddock Avenue, Defendant's Exhibit 1, the contract of sale, is integral to the Complaint.  Compl. ¶ 4.  In the Complaint, Plaintiff explicitly refers to the "loan application" attached as Defendant's Exhibit 2; therefore, the Court may consider this document in the pending Motion to Dismiss.  Compl. ¶ 50.  Plaintiff also alleges that Novastar "employed, owned, managed and/or contracted" Mid Atlantic to serve as a broker in a refinance transaction and as a party to the alleged fraudulent lending.  Thus, Defendant's Exhibits 3, 4, 5 and 9 are properly considered by the Court, since these documents are integral to this alleged relationship.  Compl. ¶ 15.

---

[2] Defendant's Exhibits 18 and 19 are duplicate copies of Plaintiff's Exhibits A and B.

As Plaintiff explicitly refers to the Good Faith Estimate and Truth-in-Lending Statement, Defendant's Exhibits 7 and 8 will also be considered in the Motion to Dismiss. Compl. ¶ 64. Plaintiff further alleges that "Defendant's agents placed hundreds of pages [of] complicated loan documents in front of Homeowner [on July 23, 2007,] and gave her just a few minutes to read and try to understand the closing documents." Compl. ¶ 69. Defendant's Exhibits 11-17, dated July 23, 2007, are thus appropriate because they are explicitly referred to in the Complaint.

Defendant's Exhibits 6 (Private Mortgage Insurance Disclosure)[3] and 10 (Employment Verification Form)[4] are not exhibits attached to Plaintiff's Complaint, matters of public record, or integral to or explicitly relied upon in the Complaint, and thus are inappropriate for consideration on a motion to dismiss because they constitute "matters outside the pleadings." Aspdin v. Foggia, CIV.A. 10-6490 MLC, 2011 WL 4859910 (D.N.J. Oct. 13, 2011). This Court will therefore exclude these exhibits from consideration at this time.

## IV. DISCUSSION

Plaintiff is pursuing six counts against Defendant. In the first count, a civil conspiracy claim, Plaintiff contends that Defendant acted in concert and in agreement with Novastar and/or Mid Atlantic in committing fraud, misrepresentation and predatory lending. Second, Plaintiff alleges that the conduct of Defendant's agents violates the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., thereby voiding Plaintiff's mortgage. Third, Plaintiff claims she is entitled to declaratory relief pursuant to N.J.S.A. 2A:16-51, et seq. Fourth, Plaintiff makes a promissory estoppel claim, arguing that she relied on the statements and promises of Defendant

---

[3] Plaintiff's need to purchase private mortgage insurance prior to closing is not at issue or even mentioned in the Complaint.

[4] Even though the document attached is titled the "Employment Telephone Verification Form: non self-employed," the form simply states that the corporation "Spiritual Touch" was registered with the Camden County Clerk on October 31, 2001, and provides no other relevant information.

and its agents to her detriment.  Fifth, Plaintiff alleges that Defendant intended that Plaintiff rely on fraudulent misrepresentations regarding the loan transaction.  Finally, Plaintiff contends that Defendant is a legal assignee of a high-cost mortgage and Note and that Defendant's actions make it liable under N.J.S.A. 46:10B-27.

    A. **Agency Relationship**

    Plaintiff rests her Complaint on the allegation that Defendant is liable for the allegedly fraudulent actions of Mid Atlantic and Novastar in originating Plaintiff's mortgage loan.  Compl. ¶ 91.  Since Plaintiff has not pointed to any evidence of an express agency relationship, it would seem that Plaintiff must prove the existence of an apparent agency relationship between Defendant and Mid Atlantic and/or Novastar in order to establish Defendant's liability.  To prove the existence of apparent agency, one must establish that: (1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances.  Mayflower Transit, LLC v. Prince, 314 F. Supp. 2d 362, 374 (D.N.J. 2004) (citing Mercer v. Weyerhaeuser Co., 735 A.2d 576 (App. Div. 1999) (internal citations omitted)).  If such facts are alleged, a court must subsequently examine the "totality of the circumstances" to determine whether an apparent agency relationship existed even though the principal did not have direct control over the agent.  Sears Mortg. Corp., 634 A.2d 74, 80 (N.J. 1993).

    Plaintiff has failed to plead facts to support the assertion that Defendant was an agent of Mid Atlantic or Novastar.  Therefore, in the absence of such facts, the Court cannot conclude that such an agency relationship existed.

**1. Count I: Conspiracy**

The Third Circuit has held that in New Jersey the tort of civil conspiracy contains four elements: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003). However, "not every conspirator must commit an overt act in furtherance of the conspiracy, so long as at least one does." Id. at 415. Here, because Plaintiff has alleged that Novastar and/or Mid Atlantic committed overt acts, Plaintiff need not demonstrate that Defendant committed an overt act in furtherance of the conspiracy.

In D & D Assocs. v. Bd. Of Educ., the defendant's motion for summary judgment was granted when Plaintiff failed to (1) provide any evidence suggesting that one or more of the defendants entered into an agreement to commit an unlawful act or engaged in any discussions that could be construed as an agreement, (2) specifically identify an unlawful act that any defendant committed in furtherance of the alleged conspiracy, and (3) identify its "special" damages. No. Civ. 03–1026, 2007 WL 4554208, at * 29 (D.N.J. Dec. 21, 2007).

Plaintiff alleges that Defendant had an agreement and "acted in concert with its agent, Novastar, and its agent, Mid Atlantic, when committing fraud, misrepresentation and predatory lending." Compl. ¶¶ 91-92. Plaintiff further alleges that "Defendant had knowledge of, or acted in concert with the originating lenders to perpetuate fraud and predatory lending tactics upon the Plaintiff in an effort to earn profits through the sale of Plaintiff's loan in the secondary mortgage market." Pl. Mem. of Law at 27.

9

As in <u>D & D Assocs.</u>, Plaintiff makes only vague and conclusory allegations that Defendant, Novastar and Mid Atlantic were parties to a conspiracy agreement. These allegations fail to raise Plaintiff's claim to relief above a speculative level. See <u>Twombly</u>, 550 U.S. at 545. Therefore, Defendant's Motion to Dismiss Count I is granted.

### 2. Count II: Violation of the New Jersey Consumer Fraud Act

To state a claim under the Consumer Fraud Act (CFA), a plaintiff must allege: "(1) unlawful conduct by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss."[5] N.J.S.A. § 56:8-1; <u>Dabush v. Mercedes-Benz USA, LLC</u>, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005).

Plaintiff alleges that the acts of Defendant's agents violated the New Jersey Consumer Fraud Act (CFA), N.J.S.A. § 56:8-1 <u>et seq.</u> Specifically, Plaintiff contends that:

> Defendant's conduct was the act, use or employment of an unconscionable commercial practice as set forth above includ[ing] deception, fraud, false pretense, false promise, misrepresentation or the knowing concealments, suppression or omission of material facts with the intent that Homeowner rely upon such concealment, suppression or omission in connection with the mortgage transaction herein.

Compl. ¶ 102.

Plaintiff claims that Defendant's actions caused her to suffer an ascertainable loss including "attorney fees, costs, [and] interest on a predatory loan." <u>Id.</u> Plaintiff argues in the

---

[5] Under the CFA, "unlawful conduct" is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby[.] . . . .

N.J. Stat. Ann. § 56:8-2 (West 1976).

10

alternative that "Defendant acted with deliberate ignorance of the fraudulent inducement and predatory lending tactics employed by its agent and co-conspirator, all to its financial gain." Compl. ¶ 103.

The Court finds that Plaintiff's claim contains sufficient elements and facts, with regard to Mid Atlantic and Novastar, to plead "unlawful conduct" under the CFA concerning her mortgage origination. However, as noted above, Plaintiff must demonstrate the existence of an agency relationship between Defendant and Mid Atlantic and/or Novastar in order to causally relate her ascertainable loss to the conduct of Defendant. As Plaintiff has not done so, the Court grants Defendant's Motion to Dismiss as to Count II.

### 3. Count III: Declaratory Relief Under N.J.S.A. 2A:16-51, et seq.

Plaintiff asserts that she is entitled to declaratory relief under N.J.S.A. 2A:16-51, et seq. for the above violations of the CFA or fraud allegedly committed by Defendant. As discussed in subsection IV.A., supra, before the right to declaratory relief can be addressed Plaintiff must first establish that an agency relationship between Defendant and Mid Atlantic and/or Novastar existed. Therefore, the Court grants Defendant's Motion to Dismiss as to Count III.

### 4. Count V: Fraud

To establish common-law fraud, a plaintiff must show there was: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Walid v. Yolanda for Irene Couture, Inc., 40 A.3d 85, 90 (N.J. Super. Ct. App. Div. 2012) (quoting Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997)).

11

Plaintiff claims that Mid Atlantic and Novastar knowingly misrepresented and omitted material facts relating to the loan transaction, and that Defendant knew of those falsities and intended that they be relied on.  Compl. ¶¶ 125-129.  Plaintiff further alleges that she was justified in relying on those misrepresentations and omissions, which were the factual cause of the harm suffered.  Compl. ¶¶ 131-133.

Plaintiff has sufficiently pled the elements of a common-law fraud claim as to Mid Atlantic and Novastar.  However, as Plaintiff has not established the existence of an agency relationship between Defendant and Mid Atlantic and/or Novastar, the Court grants Defendant's Motion to Dismiss as to Count V.

**5.  Count IV: Promissory Estoppel**

In order to establish promissory estoppel, four elements must be demonstrated: (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.  Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 704 A.2d 1321, 1324 (N.J. Super. Ct. App. Div. 1998).

Plaintiff contends that (1) she relied on the oral and written statements and/or promises of Defendant's agents, Mid Atlantic and Novastar, regarding the true terms of the mortgage, (2) Defendant expected such reliance, (3) her reliance was reasonable, and (4) she relied on these statements to her detriment.  Compl. ¶¶ 117-120.  Although the parol evidence rule and Statute of Frauds would normally bar the admission of such evidence where a written document to the contrary exists, such written documents are voidable in the case of fraudulent inducement.  Timken Silent Automatic Corp. v. Vetrovec, 119 N.J.L. 500, 503 (N.J. 1938) (finding oral

testimony admissible when the execution of a contract was fraudulently induced).  In this case, "the evidence is admitted, not in order to enforce the contract, but rather to avoid it, or as here, to prosecute a separate action predicated upon the fraud." Ocean Cape Hotel Corp. v. Masefield Corp., 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960).

Here, Plaintiff has properly alleged that her contract with Mid Atlantic and Novastar is voidable.  However, as previously discussed, Plaintiff must first establish that an agency relationship between  Defendant and Mid Atlantic or Novastar existed before Plaintiff can state a claim for promissory estoppel against Defendant.  Therefore, the Court grants Defendant's Motion to Dismiss as to Count IV.

**B. Count VI: Assignee Liability Under the New Jersey Homeownership Security Act**

Finally, Plaintiff contends that because she received a "high-cost home loan" pursuant to N.J.S.A. § 46-10B-27, Defendant, as an assignee of Plaintiff's mortgage and Note under the New Jersey Homeownership Security Act (HOSA), is liable for all claims against the original broker and lender.  Compl. ¶¶ 135-137.

Under the HOSA, a high-cost home loan is defined as a home loan for which the principal amount of the loan does not exceed $350,000, and the annual percentage rate (APR)

meets or exceeds either the "rate threshold" or the "total points and fees threshold" as defined in N.J. Stat. Ann. § 46:10B-24.[6]  The "rate threshold" is exceeded if:

> [T]he annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.

15 U.S.C.A. § 1602 (West 2012); see N.J. Stat. Ann. § 46:10B-24 (West 2004).

According to the Truth-in-Lending Disclosure Statement (Def.'s Ex. 8), dated June 25, 2007, Plaintiff's APR was set at 11.039%.  It is unclear when Plaintiff signed the loan application, since the application appears only to be dated by the interviewer on June 14, 2007 (Def.'s Ex. 2).  As such, the Court will consider two Treasury Security publication dates to calculate the rate threshold: May 15, 2007, on which the rate was 4.88%, and June 15, 2007, on which the rate was 5.26%.  See Daily Treasury Yield Curve Rates, U.S. DEP'T OF TREASURY, http://www.treasury.gov/resource-center/data-chart-center/interest-rates/pages/TextView.aspx?data=yieldYear&year=2007 (last visited July 27, 2012).  Under either calculation, Plaintiff's APR of 11.039% does not exceed by 10 percentage points the yield on Treasury securities for that period.

---

[6] The HOSA defines these thresholds as follows:

> (1) "Rate threshold": the annual percentage rate of the loan at the time the loan is consummated such that the loan is considered a "mortgage" under section 152 of the federal "Home Ownership and Equity Protection Act of 1994," Pub.L. 103-325 (15 U.S.C. § 1602(aa)), and the regulations promulgated by the Federal Reserve Board, including 12 C.F.R. § 226.32, without regard to whether the loan transaction is or may be a "residential mortgage transaction," as defined in 12 C.F.R. § 226.2(a)(24).
>
> (2) "Total points and fees threshold" means that the total points and fees payable by the borrower at or before the loan closing, excluding either a conventional prepayment penalty or up to two bona fide discount points, exceed:
>
> (a) 4.5% of the total loan amount if the total loan amount is $40,000 or more; . . . .

N.J. Stat. Ann. § 46:10B-24 (West 2004).

Plaintiff's APR also fails to exceed the "total points and fees threshold" under the HOSA. Plaintiff's settlement statement (Def.'s Ex. 14) indicates that Plaintiff paid a total of $7,426.75 in fees before the loan closing, which does not exceed 4.5% of the total loan amount.[7] Therefore, because Plaintiff's APR does not exceed either of the rate thresholds within the HOSA, Plaintiff's claim fails as a matter of law. Accordingly, Defendant's Motion to Dismiss Count IV is granted.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Counts One through Six of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**. An accompanying Order shall issue today.

Dated:   8/06/2012                                                                /s/ Robert B. Kugler          _
                                                                                 ROBERT B. KUGLER
                                                                                 United States District Judge

---

[7] 4.5% of the "total loan amount" would be equal to $8,505 ($189,000 x 4.5%). The total loan amount is defined as the principal of the loan minus all points and fees that are included in the principal amount of the loan.  N.J. Stat. Ann. § 46:10B-24 (West 2004). Plaintiff presents no information to suggest that the principal amount on the loan was less than $189,000 (minus all deducted points and fees) at the loan closing.